# Applicability of 18 U.S.C. § 207(d) to Certain Employees in the Treasury Department

The post-employment restrictions of 18 U.S.C. § 207(d), which cover officials paid "at" the rate for level I of the Executive Schedule, do not apply to officials paid at a higher rate. Those officials are instead subject to the restrictions of 18 U.S.C. § 207(c).

November 3, 2000

MEMORANDUM OPINION FOR THE ASSISTANT GENERAL COUNSEL
DEPARTMENT OF THE TREASURY

You have asked for our opinion whether the post-employment restrictions of 18 U.S.C. § 207(d) (1994), which apply to "very senior" executive branch personnel, cover certain employees of the Department of the Treasury ("Treasury") who are compensated at a rate of pay exceeding that for level I of the Executive Schedule ("level I"). *See* Letter for Randolph Moss, Acting Assistant Attorney General, Office of Legal Counsel, from Kenneth R. Schmalzbach, Assistant General Counsel, Department of the Treasury (Mar. 17, 2000) ("Schmalzbach letter"). We conclude that § 207(d) does not apply to the Treasury Department employees specified in your letter.

I.

Section 207(d) states:

(1) [A]ny person who . . . is employed in a position in the executive branch of the United States (including any independent agency) *at a rate of pay payable for level I of the Executive Schedule . . .* and who, within 1 year after the termination of that person's service in that position, knowingly makes, with the intent to influence, any communication to or appearance before any person described in paragraph (2), on behalf of any other person (except the United States), in connection with any matter on which such person seeks official action by any officer or employee of the executive branch of the United States, shall be punished as provided in section 216 of this title.
(2) Persons who may not be contacted — The persons referred to in paragraph (1) with respect to appearances or communications . . . are — (A) any officer or employee of any department or agency in which such person served in such position within a period of 1 year before such person's service or employment with the United States Government terminated, and (B) any person

284

> appointed to a position in the executive branch which is listed in
> section 5312, 5313, 5314, 5315, or 5316 of title 5.

18 U.S.C. § 207(d) (emphasis added).

We understand that there are some Treasury employees, including some at the Internal Revenue Service ("IRS") and some at the Office of Thrift Supervision ("OTS"), whose salaries exceed the rate of pay for level I. *See* Schmalzbach letter at 2–3. These employees' salaries are authorized by three statutory provisions. First, the Secretary of Treasury may request approval from the Office of Management and Budget to disburse "critical pay" for one or more positions within the IRS. 5 U.S.C. § 9502(a) (Supp. IV 1998). Second, the Secretary may "fix the compensation of, and appoint individuals to, designated critical administrative, technical, and professional positions needed to carry out the functions of the Internal Revenue Service." *Id.* § 9503(a). Both of these provisions allow the employees' salaries to exceed the salary for level I officials ($157,000), but not that of the Vice President ($181,400). *See id.* §§ 9502(b) & 9503(a)(7). Third, the Director of OTS, a Treasury Department component, may fix the salaries of OTS employees "without regard to the provisions of other laws applicable to officers or employees of the United States." 12 U.S.C. § 1462a(h)(1) (1994).

The issue here is whether employees receiving, under these provisions, pay exceeding that for level I are subject to the general "cooling off" prohibition of 18 U.S.C. § 207(c) (1994 & Supp. IV 1998) or the broader prohibition of 18 U.S.C. § 207(d). Under § 207(c), for one year after leaving a "senior" position, a former official may not make any communication to or appearance before his or her former agency with an intent to influence, in connection with seeking official action, unless one of several statutory exceptions applies. Moreover, the scope of § 207(c) ordinarily is subject to narrowing, as to certain categories of former officials, if the Director of the Office of Government Ethics ("OGE") determines that an agency or bureau within another agency should be treated as a separate agency because it "exercises functions which are distinct and separate from the remaining functions of the department or agency and that there exists no potential for use of undue influence or unfair advantage based on past Government service." *Id.* § 207(h)(1). Insofar as § 207(c) would otherwise raise a bar, this determination enables anyone formerly employed in such a separate agency or bureau to make communications to or appearances before other components of the larger agency. You give, as an example, a representation before OTS by a former official of the IRS. Schmalzbach letter at 2. A former "very senior" official covered by § 207(d), however, may not make a communication to or appearance before any official of his or her former agency and is not eligible for any narrowing determination by OGE; and former very senior officials are under an additional prohibition reaching communications to or appearances before any official, whether at the former agency or another one, if the current official is in

an Executive Schedule position under 5 U.S.C.A. §§ 5312–5316 (West Supp. 2000).

## II.

The text of subsection (d) is unambiguous. Because the bar applies to "any person . . . employed in a position in the executive branch of the United States (including any independent agency) *at* a rate of pay payable for level I of the Executive Schedule," 18 U.S.C. § 207(d)(1) (emphasis added), the language signifies that § 207(d) applies only to employees whose pay is the same as that of a level I official.[1]

An examination of § 207 as a whole buttresses this interpretation. The language describing the scope of subsection (d) is notably different from that of subsection (c), which includes employees whose basic rate of pay "is *equal to or greater than* the rate of basic pay payable for level V of the Senior Executive Service." 18 U.S.C. § 207(c)(2)(A)(ii) (emphasis added); *see also id.* § 207(c)(2)(A)(iv) (stating that subsection (c) also applies to officers of the uniformed services whose pay grade "is pay grade 0–7 or above"). Congress presumably was aware that various statutes authorized pay above that for level I, yet chose the narrower and more targeted language of subsection (d). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Bates v. United States*, 522 U.S. 23, 29–30 (1997) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)); *see also Crandon v. United States*, 494 U.S. 152, 166–67 (1990) (looking to the ethics statute as a whole in interpreting a particular provision).

This reading may appear to lead to anomalous consequences. Section 207 uses a former official's salary as a proxy for ability to exercise influence, so that higher salaries in general lead to greater post-employment restrictions. *See* Memorandum for Susan F. Beard, Acting Deputy Assistant General Counsel, Department of Energy, from Daniel L. Koffsky, Acting Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Applicability of the Post-Employment Restrictions of 18 U.S.C. § 207(c) to Assignees Under the Intergovernmental Personnel Act* at 3–4 (June 26, 2000). Here, former officials who received pay above level I would be subject to lesser restrictions than the lower-paid former officials who were paid at level I. This apparent anomaly, however, can be resolved in light of the statutory purpose. The officials paid at level I, listed in 5 U.S.C.A. § 5312, include the members of the cabinet, the Director of the Office of Management and Budget, and the Commissioner of Social Security. Section 207(d) also specifically applies to the Vice President of the United States. *See* 18 U.S.C. § 207(d)(1)(A). As you observe, the Treasury employees in question here lack

---

[1] The legislative history, which scarcely refers to subsection (d), does not suggest a broader interpretation.

the authority and stature of level I officials, whose positions create the potential "to exercise unusual continuing influence over former Level I colleagues for a period of time after leaving the Government." Schmalzbach letter at 4. Unlike the Secretary of the Treasury, these IRS employees are typically hired for temporary work and do not have offices of substantial, continuing authority. *See, e.g.,* 5 U.S.C. § 9503. Although the tenure of the OTS employees in question is not similarly limited by statute, they are subordinate to the Director of OTS, who himself is subordinate to the Secretary. Thus, these OTS employees also lack the stature of level I officials. In sum, the Treasury employees in question, while receiving a higher salary than officials paid at level I, will have less ability to exercise post-employment influence than those listed in 5 U.S.C.A. § 5312, and their former positions will also be far less likely to create an appearance of undue influence.

In arriving at this conclusion, we are also mindful, too, that "[c]riminal statutes should be given the meaning their language most obviously invites. Their scope should not be extended to conduct not clearly within their terms." *United States v. Williams,* 341 U.S. 70, 82 (1951) (plurality opinion); *see also Crandon,* 494 U.S. at 168. Because the apparent anomaly can be reconciled, we would not give § 207(d) a broader reading than the language would suggest.

One problem remains. If the salary of the Treasury employees in question had been set *exactly* at the rate for level I, subsection (d) by its terms would seem to apply. Although the Treasury employees happen now to be paid at a rate that *exceeds* the salary fixed for level I, *see* Schmalzbach letter at 3, other employees in the future might receive pay exactly at the level I rate. Thus, lowering the pay for one of these subordinate positions to the rate for level I would have the truly anomalous effect of increasing the post-employment restrictions. This result, however, follows from the precise language chosen by Congress. Furthermore, in view of the present opinion, any future decision to set a salary exactly at the rate for level I will presumably reflect at least an administrative determination that the more stringent post-employment restrictions should apply.[2]

DANIEL L. KOFFSKY
*Acting Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[2] As this discussion indicates, we do not believe that § 207(d) applies exclusively to officials listed in 5 U.S C A. § 5312, *see* Schmalzbach letter at 1 n.1, but rather to any executive branch employee who is paid the same level I rate of pay that the officials listed in 5 U.S C A. § 5312 receive.